**Anna Wilson STRADT, Petitioner,**

v.

**FIRST UNITED METHODIST CHURCH OF HUNTINGTON, Respondent.**

**No. B–7542.**

Supreme Court of Texas.

Nov. 1, 1978.

Rehearing Denied Dec. 6, 1978.

---

4. Id., 278–279.

Robert L. Flournoy, Lufkin, for petition-er.

William Drew Perkins, Lufkin, for re-spondent.

JOHNSON, Justice.

The issue to be resolved in this lawsuit is a "no evidence" point dealing with a parol partition of land. Suit was instituted by Anna Stradt, plaintiff in the trial court and petitioner here, for partition of a 177-acre tract of land and an accounting. The First United Methodist Church, defendant below and respondent here, filed a cross action in

the nature of a trespass to try title suit. Upon trial to a jury, the trial court rendered a take-nothing judgment against Mrs. Stradt and further decreed that full title to the land be awarded to the Church. The court of civil appeals affirmed that judgment. 567 S.W.2d 810. Mrs. Stradt argues in her appeal to this court that there is no evidence to support the award to the Church of title to the property. We agree with this contention and accordingly reverse the judgments of the court of civil appeals and the trial court.

The essential facts of the case are these: Anna Wilson Stradt is the daughter of Dr. H. M. Wilson and Anna D. Wilson, of Huntington, Texas. Mrs. Wilson died intestate in 1912, being survived by her husband, Dr. H. M. Wilson, and two children, Anna and Preston (commonly known as "P.R."). During their marriage, Dr. and Mrs. Wilson acquired as community property approximately 2,100 acres of land. The parties agree that since Mrs. Wilson died intestate, her children, Anna and P.R., each received a one fourth undivided interest in the 2,100 acres, Dr. Wilson retaining the other one half undivided interest. Dr. Wilson subsequently remarried.

In 1946 Dr. Wilson conveyed six separate tracts of land, totaling approximately 1,600 acres, to Mrs. Stradt and P.R. for a stated consideration of $2,500 and "for the love and affection, I do have for my son and daughter." The deed does *not* recite "other good and valuable consideration," and there is no indication that Dr. Wilson received anything other than the consideration stated above. The 177-acre tract of land, which is the *only* property here in controversy, was not included in the 1946 deed.

Dr. Wilson was a member of the Baptist Church, but his second wife was a member of the Methodist Church. On November 30, 1949 Dr. Wilson conveyed by separate deeds 275 acres of land to the First Baptist Church of Huntington and the 177 acres of land now in suit to the First United Methodist Church of Huntington. The deeds in each instance purported to convey full title to the land. Mrs. Stradt and P.R. did not join in these deeds.

Mrs. Stradt first learned of the 1949 conveyance by her father of the 177 acres to the Methodist Church sometime in the early 1950's. In 1956 she paid the back taxes on the property for her one fourth interest in the land and continued to pay the taxes on her interest until 1976, the time of this suit. The Church has not been as regular, having been delinquent from 1950 through 1974. In 1961 P.R. deeded his one fourth interest in the 177 acres to the Methodist Church, but reserved his interest in the oil, gas, and minerals. At no time has Mrs. Stradt conveyed her interest in the 177 acres to anyone.

On December 2, 1976 Mrs. Stradt filed the instant suit for an accounting and for a partition of her one fourth interest in the land.[1] The Church filed a cross action in the nature of a trespass to try title suit, claiming sole title to the 177 acres under various statutes of limitations.[2] The Church offered no evidence of limitation title and no special issue was requested or submitted on that theory.

Instead, the Church tried the case on the theory of parol partition, the argument being that the 1946 conveyance of the 1,600 acres by Dr. Wilson to Mrs. Stradt and P.R. was in full settlement of their interest in their mother's estate. If that were the case, then Mrs. Stradt and P.R. would not have had any interest left in the 177-acre tract at the time of the 1949 conveyance from Dr. Wilson to the Church. Over Mrs. Stradt's objection, the trial court submitted two special issues to the jury on the question of parol partition.[3] Affirmative an-

1. Over the years, the Church profited from the sale of timber off the land. It is for this that Mrs. Stradt seeks an accounting.

2. The opinion of the court of civil appeals states that Mrs. Stradt filed the trespass to try title suit. This was in error and may account for the court's apparent misplacement of the burden of proof.

3. The special issues submitted were:

swers to both issues resulted in the judgment that Mrs. Stradt take nothing and that the Church be awarded full title to the land. The court of civil appeals affirmed in all respects.

Mrs. Stradt's sole point of error before this court is that there was no evidence adduced at trial to support either the submission of or the jury answers to the special issues. Counsel for Mrs. Stradt agreed in oral argument that the issues, answers, and judgment would be correct if there was some evidence to support the jury findings that a parol partition had occurred.

■ In deciding a "no evidence" point, we must view the evidence in its most favorable light in support of the verdict, considering only the evidence and inferences that support the jury findings. *Lucas v. Hartford Acc. & Indem. Co.*, 552 S.W.2d 796, 797 (Tex.1977). *See* Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 Tex.L.Rev. 361, 362–65 (1960). After reviewing the record as a whole, we are of the opinion that Mrs. Stradt is correct; there is no evidence of a parol partition. Consequently, the judgments of the trial court and the court of civil appeals must be reversed.

■ The court of civil appeals and the Church rely on essentially the same facts to show a parol partition. First is the fact that Mrs. Stradt and P.R. accepted and made use of the 1,600 acres deeded to them by their father in 1946. It is true that conduct such as taking possession of land by the respective parties to a parol partition may be evidence of the fact of partition. *Reynolds v. Mangrum*, 250 S.W.2d 283 (Tex. Civ.App.—Eastland 1952, no writ); *Robinson v. O'Connor*, 181 S.W.2d 935 (Tex.Civ. App.—El Paso 1944, writ ref'd w. o. m.);

*Edwards v. Edwards*, 52 S.W.2d 657 (Tex. Civ.App.—Austin 1932, writ ref'd). The evidence does show that Mrs. Stradt and P.R. accepted the 1,600 acres, but it does not show that they relinquished their claim to the 177-acre tract. If anything, the proof shows just the opposite: they did not relinquish their claim. Further, there is no evidence indicating what actions, if any, Dr. Wilson took with regard to the 177 acres before his conveyance to the Church in 1949. The record does not disclose whether Dr. Wilson took possession of the land, barred Mrs. Stradt and P.R. from use of the land, indicated to anybody that he believed himself to be sole owner of the land, or anything else. As it stands, the evidence is entirely consistent with the position espoused by Mrs. Stradt, that she merely accepted the 1,600 acres she had purchased and received from her father. It is not proof of a parol partition of the 177 acres.

■ Secondly, the court of civil appeals relied on the fact that Mrs. Stradt never denied the Church's contention of a parol partition, even though she did testify at trial. It is urged that her silence in itself could support an inference by the jury that the Church's assertions were true. This misconceives the burden of proof in a trespass to try title suit. It was not Mrs. Stradt's burden to prove there was *not* a parol partition; the Church had the burden to prove there *was* one. If the Church failed to sustain this burden, then it was not incumbent upon Mrs. Stradt to deny the existence of something that had not been proved.[4] Consequently, her silence does not constitute proof of a parol partition.

■ Thirdly, the court of civil appeals emphasized the fact that Mrs. Stradt waited nearly three decades before asserting her

(1) "Do you find from a preponderance of the evidence that on July 12, 1946, H. M. Wilson conveyed certain lands to the Plaintiff herein, Anna Elizabeth Wilson Stradt, in full settlement, if any, of Mrs. Stradt's interest in her mother's estate?"
(2) "Do you find from a preponderance of the evidence that the Plaintiff herein, Anna Wilson Stradt, accepted such lands in settlement, if any, of her interest in her mother's estate?"

4. It should be noted in this regard that the Church called Mrs. Stradt as its own witness under the adverse party rule. No better opportunity could have presented itself for the Church to prove its theory of parol partition than through this witness. The Church having failed to develop this testimony on direct examination, Mrs. Stradt's attorney was not required to disprove it on cross-examination.

claim to the land, at which time she was the only member of the family still living. We would disagree with this characterization of the record. While it is true that Mrs. Stradt did not file suit until 1976, she did pay taxes on the land for more than twenty-five years. As noted in her brief, it is common to own property jointly with others and one does not lose his rights thereunder for failure to sue for partition. In this connection, it should be noted that her brother, P.R., obviously felt that he continued to own his interest in the land; otherwise, he would not have deeded the land to the Church in 1961 and retained an interest in the oil, gas, and minerals. It cannot be said that the Church's claim of ownership to the land went unquestioned for three decades.

Finally, the Church argues that the jury could have drawn upon its common experiences of everyday living and decided that Dr. Wilson was seeking to "settle with his heirs and seek pennance [*sic*] from his Maker" as he approached the end of his life. This might be true insofar as Dr. Wilson was concerned, but the subjective intent of one party is not proof of an agreement between several parties to partition land.

When viewed in its most favorable light, the evidence at best shows that Dr. Wilson intended a partition. There is no evidence showing that Mrs. Stradt and P.R. either knew of or consented to this intended partition. A voluntary partition of land must be based on the agreement of all parties with a possessory interest thereto and cannot be the result of a unilateral decision. *State v. Kirkpatrick*, 299 S.W.2d 394, 397 (Tex.Civ.App.—Dallas 1957, writ ref'd n. r. e.); *Brito v. Slack*, 25 S.W.2d 881 (Tex.Civ.App.—El Paso 1930, no writ); *Turner v. Pope*, 137 S.W. 420, 422 (Tex.Civ. App.—Galveston 1911, writ dism'd). *See also Condra v. Grogan Mfg. Co.*, 149 Tex. 380, 233 S.W.2d 565, 567 (1950). What the evidence in this case more nearly shows is a conveyance in 1946 of the 1,600 acres from Dr. Wilson to his children, which left unaffected their respective interests in the 177-acre tract of land. *See Zanderson v. Sulli-*

*van*, 91 Tex. 499, 44 S.W. 484 (1898); *Hyde v. Hyde*, 212 S.W.2d 226 (Tex.Civ.App.— Beaumont 1948, no writ).

The Church has raised a "contingent" point of error complaining of an evidence ruling by the trial court. We do not consider this point to be properly before us.

Since there was no evidence proving a parol partition, the trial court erroneously submitted special issues on that matter to the jury and erroneously rendered judgment on the basis of the jury answers to those issues. Accordingly, we reverse the judgments of the trial court and the court of civil appeals and render judgment that the Church take nothing in its trespass to try title claim. It further appears that Anna Stradt is entitled to a partition and an accounting, which will require further actions in the trial court. Therefore, Mrs. Stradt's cause is remanded to the trial court for further proceedings in accordance with this opinion.